CLARENCE BISHOP, Appellee, v. Baird & Baird et al., Appellees; HUGHES FINANCE COMPANY, Appellant; PACIFIC FRUIT EXPRESS COMPANY, Appellee.

No. 47048.

OCTOBER 14, 1947.

Baird & Baird, of Council Bluffs, for Hughes Finance Company, appellant.

John J. Hess, of Council Bluffs, for Clarence Bishop, appellee.

Wright & Kistle, T. W. Bockes, and R. B. Hamer, all of Council Bluffs, for Pacific Fruit Express Company, appellee.

OLIVER, C. J.—July 6, 1940, plaintiff purchased a used Ford coupé from defendant Hughes Motor Company, under a contract of conditional sale, for $315, payable $75 in advance and $10 the 10th and 25th of each month. The printed contract contained also an assignment of the purchaser's wages. Plaintiff made the payments due July 10th and 25th. August 15, 1940, plaintiff returned the automobile. He contends it was accepted in satisfaction of the contract.

March 1, 1945, defendant Hughes Finance Company, through its attorneys, gave plaintiff's employer, Pacific Fruit Express Company, written notice that it held an assignment of plaintiff's wages, and the amount due it with interest to that date was $225.92. The finance company directed the employer to withhold this amount from plaintiff's wages and pay the same to it. Accordingly, Pacific Fruit Express Company withheld $303.93.

Plaintiff promptly demanded of the Hughes Companies the release of the assignment, asserting it was invalid because the debt had been satisfied in 1940, and for other reasons which need not be here considered. Upon refusal of this demand plaintiff instituted this action, alleging the assignment was no longer effective, that in filing it with his employer and effectuating the withholding of his wages defendants acted willfully and maliciously. Plaintiff prayed the cancellation of the assignment and conditional sale contract and judgment for $100 actual damages and $100 punitive damages.

Defendant Hughes Finance Company pleaded the assignment and debt were valid and subsisting and prayed they be so adjudicated and enforced against defendant Pacific Fruit Express Company for $171.56 with interest at seven per cent per annum from August 20, 1940, until paid, plus attorney's fees and costs. Defendant Pacific Fruit Express Company

pleaded it had withheld $303.93 from plaintiff and was willing to pay the same as the court might adjudge.

The trial court found and adjudged the conditional sale contract had been fully satisfied, ordered its cancellation, authorized and directed defendant Pacific Fruit Express Company to pay plaintiff his withheld wages, and rendered judgment for plaintiff against defendant Hughes Finance Company for $100 as damages for unlawfully and illegally interfering with the payment of wages earned by plaintiff. Defendant Hughes Finance Company appeals.

I. Appellant contends the court erred in adjudging the conditional sale contract had been satisfied by the agreement had in connection with the return of the car. Plaintiff testified he returned the car, told them he would be unable to pay for it, and it was agreed the whole deal was canceled; that he was told a release was unnecessary; that shortly thereafter he received a letter advising him he owed a balance of about $171; that he talked to Mr. Hughes, who told him there had been a mistake in failing to have the books show the satisfaction of the account, that plaintiff owed nothing, and he (Mr. Hughes) would have their records corrected.

It is undisputed that plaintiff kept the used car for only one month and nine days and paid almost one third of the purchase price and that he surrendered the car and forfeited these payments. Another undisputed circumstance is that for four and one-half years thereafter appellant made no claim against plaintiff.

Witnesses for appellant conceded plaintiff voluntarily returned the car on August 15th without demand on their part. However, they disputed plaintiff's testimony relative to the agreement then made. If their recitations are correct, the Hughes Companies not only regained the car and retained the $95 paid by plaintiff but the transaction also resulted in plaintiff's owing them an additional $171.56, with interest, which they were entitled to collect from his wages.

The trial court saw and heard the witnesses. We agree with its finding that the contract was satisfied and canceled by the agreement of August 15, 1940.

■ II. The conditional sale contract was made by Hughes Motor Company, a corporation operated by Mr. Hughes. The contract was on a printed form of Hughes Finance Company, a nonincorporated enterprise owned and operated by the same Mr. Hughes. These two concerns occupied the same premises. Apparently the finance company handled most of the paper for the motor company. Mr. Wind, office manager for the motor company, was manager for the finance company. After the conditional sale contract was executed it was immediately assigned by the motor company to the finance company, and according to Mr. Hughes the finance company made payment for said contract by book entry.

Records made by appellant show the conditional sale contract was foreclosed by the finance company August 20, 1940, and by foreclosure sale held on the premises the car was sold to the motor company for $50. Mr. Wind testified the sale was conducted by a clerk of the finance company as its agent. However, Mr. Wind executed the bill of sale to the motor company, which recites Mr. Wind conducted the foreclosure sale as agent of the finance company. The proof of the posted notice of foreclosure sale under the conditional sale contract was made by affidavit sworn to before Mr. Wind, notary public. Mr. Wind testified also he supervised or participated in the original deal with plaintiff, and in the conversation with plaintiff on August 15th, when plaintiff returned the car.

Appellant asserts the motor company and finance company are not the same concern and that the transactions of each should be considered apart from those of the other. The record indicates some confusion of plaintiff as to the respective parts played by the two Hughes concerns in some of the transactions. However, both concerns had knowledge of and participated in all the transactions in question, and neither the corporation Hughes Motor Company nor the subsidiary Hughes Finance Company may successfully set up lack of identity as a defense in this action.

■ III. Appellant contends the court erred in awarding plaintiff judgment against it for $100. It argues that plaintiff, having assigned his wages to it, has no legal basis for recovery

of damages resulting from its notification to plaintiff's employer of its claim thereto. Appellant relies upon Coyle v. Des Moines Gately's, Inc., 230 Iowa 511, 298 N. W. 797; Haines v. M. S. Welker & Co., 182 Iowa 431, 437, 165 N. W. 1027; Hutchins v. Jones Piano Co., 209 Iowa 394, 228 N. W. 281. It is sufficient to say none of these decisions is factually in point. In the case at bar plaintiff owed appellant nothing and had owed it nothing for some years. It is clear plaintiff cannot be said to have consented to the withholding of his wages for the payment of an obligation long since satisfied.

The situation here is in some respects the same as in Lopes v. Connolly, 210 Mass. 487, 494, 97 N. E. 80, 81, 38 L. R. A., N. S., 986, and Doucette v. Sallinger, 228 Mass. 444, 117 N. E. 897. See, also, 29 A. L. R. 537, and 30 Am. Jur., Interference, section 16. In the Lopes case defendant mistakenly served upon plaintiff's employer notice of an assignment of wages made by another person with the same name as plaintiff. Upon being informed of this mistake defendant refused to withdraw the notice. The decision states if defendant had attempted to collect the debt by garnishment this refusal would have been abundant proof of an abuse of legal process:

"The result accomplished by the notice being indistinguishable, the defendant, who acted at his peril, is answerable in damages which are measured by the natural and probable consequences resulting from the attempt to enforce a groundless claim."

Plaintiff was wrongfully deprived of approximately $300 for about sixteen months to the time of trial. Ordinarily, the measure of damages for the wrongful detention of money is interest during the period of detention. 38 C. J. S., Garnishment, section 313. See, also, Hixson v. First Nat. Bk., 198 Iowa 942, 945, 200 N. W. 710. This rule appears to be here applicable.

Plaintiff asked exemplary damages also, alleging defendants acted maliciously in demanding his wages and procuring his employer to withhold them. Appellant contends there was no evidence of malice. In Connelly v. White, 122 Iowa 391, 393, 98 N. W. 144, 145, a malicious prosecution action for the

wrongful suing out of a writ of attachment without probable cause, the court pointed out that actual malice or personal ill will is not essential to constitute legal malice: "The malice required to support the action may be inferred by the jury from want of probable cause." In such an action on contract, the inference of want of probable cause and malice may be drawn from the finding of nothing due. Peters v. Snavely-Ashton, 144 Iowa 147, 155, 120 N. W. 1048, 122 N. W. 836; Smeaton v. Cole, 120 Iowa 368, 372, 94 N. W. 909.

We conclude such inference would be permissible where, as here, one causes the impounding of another's wages for an asserted obligation found to have been fully satisfied. In this case there are other circumstances tending to indicate appellant's conduct was oppressive and malicious and we conclude the entire record warrants such a finding. The judgment of the trial court does not itemize the damages awarded but the $100 total does not appear excessive and we conclude the judgment should be affirmed.—Affirmed.

BLISS, HALE, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.